# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| INTEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0021-MTZ |
| | ) | |
| FORTRESS INVESTMENT GROUP, | ) | |
| LLC, VLSI TECHNOLOGY LLC, CF | ) | |
| VLSI HOLDINGS LLC, FINJAN LLC, | ) | |
| FINJAN SOFTWARE, INC., FINJAN | ) | |
| HOLDINGS, INC., and CFIP | ) | |
| GOLDFISH HOLDINGS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 10, 2021
Date Decided: September 30, 2021

Jack B. Blumenfeld, Kenneth J. Nachbar, Ryan D. Stottmann, Elizabeth A. Mullin, and Miranda N. Gilbert, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Plaintiff Intel Corporation*.

Jeffrey L. Moyer, Kelly E. Farnan, Blake Rohrbacher, and Valerie A. Caras, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Attorneys for Defendants Fortress Investment Group, LLC, CFIP Goldfish Holdings LLC, and CF VLSI Holdings LLC*.

Brian E. Farnan and Michael J. Farnan, FARNAN LLP; Ben Hattenbach and Iian D. Jablon, IRELL & MANELLA LLP, Los Angeles, California; *Attorneys for Defendant VLSI Technology LLC*.

John W. Shaw, Karen E. Keller, and Jeffrey T. Castellano, SHAW KELLER LLP, Wilmington, Delaware; James P. Feeney, DYKEMA GOSSETT PLLC, Bloomfield Hills, Michigan; Lisa A. Brown, DYKEMA GOSSETT PLLC, Detroit, Michigan; Michael Dorfman, DYKEMA GOSSETT PLLC, Chicago, Illinois; *Attorneys for Defendants Finjan LLC, Finjan Software Inc., and Finjan Holdings Inc.*

**ZURN, Vice Chancellor**

Several years ago, a technology company was sued by the same non-practicing entity ("NPE") for patent infringement in multiple jurisdictions.[1] Those actions proceeded apace, with some having reached a verdict. Last year, the technology company alerted the NPE of its belief that it has a license to the NPE's asserted patents via a contract with the NPE's affiliate. Rather than assert a license defense in each infringement action, the technology company has come to this Court seeking a sweeping declaratory judgment and an order of specific performance regarding all patents held by the NPE, its affiliates, and their parent company. The technology company also asserts claims for breach of contract and tortious interference.

The Court of Chancery is proudly a court of limited subject matter jurisdiction. This Court defends that limitation and has a duty to examine issues of subject matter jurisdiction *sua sponte*. Because the technology company has an adequate remedy at law in the form of a license defense in the infringement actions, this Court does not have subject matter jurisdiction over its requests for declaratory relief or specific performance. Those claims are therefore dismissed.

The technology company's breach of contract claims—that necessarily depend on the resolution of the license defense—are stayed. And even assuming the

---

[1] A non-practicing entity is a company that acquires and holds a patent portfolio and derives income from enforcing those patents, not by developing any marketable product or process.

1

existence of an underlying breach, the technology company has failed to plead the NPE and its parent company tortiously interfered with the affiliate's contract. Therefore, the tortious interference claims are dismissed.

## I.    BACKGROUND[2]

Plaintiff Intel Corporation ("Intel") is a Delaware corporation and a multinational technology company. Intel was sued for patent infringement by Finjan Software, Inc. ("Fijian Software"), a non-practicing entity. The litigation was resolved via a 2012 Confidential Settlement, Release and Patent License Agreement (the "Agreement") among Intel, its affiliate McAfee, Inc., Finjan Software, and Finjan, Inc. (together with Finjan Software, the "Finjan Signatories"). The Agreement established "a broad patent peace" between the signatories and their "Affiliates" for a ten-year "Capture Period."[3] "Affiliates" are defined as:

---

[2] I draw the following facts from the Verified Complaint, as well as the documents attached and integral to it. Docket Item ("D.I.") 1 [hereinafter "Compl."]. *See, e.g.*, *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Gardner Denver, Inc. S'holders Litig.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

[3] Compl. ¶¶ 24–28.

[I]n relation to a specified Person (i) any Person that, now or hereafter, directly or indirectly through one or more entities, controls or is controlled by, or is under common control with, such specified Person, or (ii) any other Person, now or hereafter, that is deemed to be an affiliate of such specified Person under interpretations of the Exchange Act.  As used in this Section 1.2, "controls", "control" and "controlled" means the possession, direct or indirect, of the power to direct the management and policies of a Person, whether through the ownership of any percentage of voting interests of such Person, through contract or otherwise.[4]

Under the Agreement, the applicable patents included "all Patent Rights" that the Finjan Signatories "owned or controlled at any time on or after November 6, 2012 by [the Finjan Signatories] or to which [they have] the right to grant licenses . . . without the requirement to pay consideration . . . for the grant of a license" and "that have a filing date or priority date" on or before the end of the Capture Period, November 20, 2022.[5]  The Agreement granted Intel a "non-exclusive, perpetual, irrevocable license" to the applicable patents, a release from liability resulting from possible infringement, and a covenant not to bring an infringement action against Intel.[6]

Intel asserts this Agreement assured patent peace with not only the Finjan Signatories, but also any entity that was or became subject to the "common control"

---

[4] *Id.* Ex. A § 1.2.  The parties dispute the meaning of "Affiliates" under the Agreement. This opinion does not resolve that issue.

[5] Compl. ¶¶ 29–30; *id.* Ex. A § 1.10.

[6] Compl. ¶ 31; *id.* Ex. A §§ 3.1, 4.1, 5.1.

of one or both Finjan Signatories, which was thereby bound not to sue Intel and its Affiliates for infringing defined patents during the Capture Period.[7]

On July 24, 2020, the Finjan Signatories' corporate parent, Finjan Holdings, Inc., was acquired by Defendant Fortress Investment Group, LLC ("Fortress"), a global investment manager (the "Acquisition").[8] Fortress acquired Finjan Holdings through an acquisition vehicle, Defendant CFIP Goldfish Holdings LLC ("Goldfish Holdings").

## A. VLSI Sues Intel For Patent Infringement.

Fortress has another subsidiary, defendant CF VLSI Holdings LLC ("VLSI Holdings"). VLSI Holdings in turn owns defendant VLSI Technology LLC ("VLSI," and together with Fortress, VLSI Holdings, Goldfish Holdings, Finjan, Finjan Software, and Finjan Holdings, "Defendants"), a Delaware limited liability company and a non-practicing entity. A chart showing the relationships among the Defendants follows.[9]

---

[7] *Id.* ¶ 27.

[8] Finjan Holdings, Inc. converted from a corporation to a limited liability company and changed its name to Finjan Holdings LLC. D.I. 28 n.1. Finjan Holdings LLC is a Delaware limited liability company, and a subsidiary of Goldfish Holdings. Compl. ¶¶ 7, 9. On July 31, 2020, Finjan, Inc. converted from a corporation to a limited liability company and changed its name to Finjan LLC. *Id.* n.1. Finjan LLC is a Delaware limited liability company and a subsidiary of Finjan Holdings. *Id.* ¶¶ 6, 9. Finjan Software is a Delaware corporation, which was dissolved in 2013. *Id.* ¶¶ 5, 9. D.I. 28 Ex. A.

[9] Compl. ¶ 9.

4



VLSI owns the patents identified in the Complaint in this action. VLSI filed at least seven patent infringement suits against Intel since 2017. The suit in the Northern District of California (the "California Action") was initiated on October 2, 2017[10] but stayed until September 1, 2021; the court ordered a status update from the parties by September 27, 2021.[11] On June 28, 2018, VLSI sued Intel in the

---

[10] *Id.* ¶¶ 60–63; *VLSI Tech. LLC v. Intel Corp.*, No. 5:17-CV-05671-BLF (N.D. Cal.). The California Action alleges past and current infringement of U.S. Patent Nos. 7,676,806, 7,706,207, 7,709,303, 8,004,922, 8,020,014, 8,268,672, and 8,566,836. Compl. ¶ 61.

[11] Order Modifying Case Schedule and Extending the Stay Until September 1, 2021, *VLSI Tech. LLC v. Intel Corp.*, No. 5:17-CV-05671-BLF (N.D. Cal. June 15, 2020), ECF No.

United States District Court for the District of Delaware for past and current infringement of U.S. Patent Nos. 7,246,027, 7,247,552, 7,523,331, and 8,081,026 (the "Delaware Action").[12]  On July 6, 2021, the District Court of Delaware denied Intel's motion to stay but granted Intel leave to amend its answer and add an affirmative license defense.[13]

On April 11, 2019, VLSI filed three lawsuits against Intel in the United States District Court for the Western District of Texas alleging past and current infringement of U.S. Patent Nos. 8,156,357, 7,523,373, 7,725,759, 7,793,025, 7,606,983, 7,292,485, 6,633,187, and 6,366,522 (the "Texas Actions").[14]  On February 25, 2021, the court granted Intel's motion for summary judgment of noninfringement on the '357 patent.[15]  On March 2, 2021, a federal jury in Texas found for VLSI and awarded damages for infringement of the '373 and '759

---

290; Order Requesting Status Update by September 27, 2021, *VLSI Tech. LLC v. Intel Corp.*, No. 5:17-CV-05671-BLF (N.D. Cal. Sept. 13, 2021), ECF No. 309.

[12] Compl. ¶¶ 64–69; *VLSI Tech. LLC v. Intel Corp.*, No. 1:18-CV-00966-CFC (D. Del.). "[VLSI] previously also alleged that Intel was infringing U.S. Patent No. 6,212,633." Compl. ¶ 65.  VLSI dropped claims related to this patent. *Id.* ¶ 67.

[13] D.I. 91; D.I. 92.

[14] Compl. ¶¶ 70–73.  As a result of transfers and consolidations, the Texas Actions, all captioned *VLSI Technology LLC v. Intel Corporation*, have been filed under the following case numbers:  No. 1:19-CV-0977-ADA; No. 6:19-CV-00254-ADA; No. 6:19-CV-00255-ADA; No. 6:19-CV-00256-ADA; No. 6:21-CV-00057-ADA; and No. 6:21-CV-00299-ADA.

[15] *VLSI Tech. LLC v. Intel Corp.*, 2021 WL 1432705, (W.D. Tex. Feb. 25, 2021).

patents.[16]  On April 21, 2021, a federal jury in another of the Texas Actions found for Intel on the '187 and '522 patents.[17]  On May 17, 2021, the court in the third Texas Action addressing the '025, '983, and '485 patents reset trial for December 16, 2021.[18]

On May 5, 2019, VLSI sued Intel in courts in Shanghai and Shenzhen, China, for past and current infringement of Chinese patents ZL201080025173.7 and ZL201410094015.9, respectively (collectively, the "China Actions" and together with the California Action, Delaware Action, and Texas Actions, the "Infringement Actions").[19]  The Shenzhen court has not set dates for hearing or trial.[20]  There is a post-trial stay in the Shanghai litigation.[21]

Several months after the Infringement Actions were initiated, and a month after the Acquisition, Intel sent a letter dated August 17, 2020 to the Defendants asserting, "As a result of Fortress's acquisition of Finjan, Intel holds a worldwide,

---

[16] D.I. 22 at 6; Jury Verdict, *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-00057-ADA (W.D. Tex. Mar. 2, 2021), ECF No. 564.

[17] Jury Verdict, *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-00299-ADA (W.D. Tex. Apr. 21, 2021), ECF No. 549.

[18] Order, Jury Selection and Trial Reset for 12/6/2021 09:00 AM before Judge Alan D. Albright, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-CV-00977-ADA (W.D. Tex. May 17, 2021), ECF No. 525.

[19] Compl. ¶¶ 74–81.

[20] D.I. 81 Ex. A ¶ 4.

[21] *Id.* ¶¶ 2–3.

fully paid-up, perpetual, irrevocable license to Fortress entities' patents, including all patents presently asserted by VLSI Technology LLC in California, Delaware, Texas, and China."[22] Intel requested that VLSI "dismiss all pending patent infringement litigation against Intel with prejudice."[23] Intel further invoked the Agreement's dispute resolution provision by providing "notice to Finjan and Fortress" regarding their alleged breaches of Sections 4, 5.1, and 8.3.[24] Alternatively, Intel indicated that it was "willing to agree to waive all Dispute Resolution requirements of Section 9.3 if Finjan/Fortress agree that Intel can proceed immediately to file a complaint in Delaware Chancery Court for adjudication of the dispute."[25] Intel's letter did not request VLSI's participation in the dispute resolution process.[26] While Finjan agreed to participate in dispute resolution, Fortress and VLSI did not.

### B. Intel Files A Complaint In This Court.

On January 11, 2021, Intel filed a complaint here bringing five causes of action (the "Complaint"). The Complaint contends Intel has a license to all of the patents Defendants own or control under the Agreement because each of the

---

[22] Compl. Ex. E.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

Defendants, as entities under Fortress's corporate umbrella, are Affiliates of Finjan as defined by the Agreement.[27] Intel seeks a declaratory judgment that the Agreement grants Intel "a worldwide, paid-up, non-exclusive, perpetual, irrevocable license under Finjan's Patents" extending to "all patents owned or controlled" by Defendants as Affiliates of the Finjan Signatories.[28] Intel seeks a second declaration that all of the patents asserted in the Infringement Actions (the "Asserted Patents") are subject to the Agreement's patent license. The proposed declaratory judgment would state, in effect, that Intel has a license to use the Asserted Patents and therefore, cannot be held liable for infringement. Intel alleges that this license is a defense to the Infringement Actions and that the Infringement Actions are a breach of the Agreement's covenant not to sue. Intel also asserts that Fortress and VLSI tortiously interfered with Finjan's Agreement.

---

[27] Compl. ¶¶ 56–57; *id.* Ex. A § 1.2. The Agreement defines Affiliate to include "any Person that, now or hereafter, directly or indirectly through one or more entities, controls or is controlled by, or is under common control with, such specified Person." *Id.* Intel contends that as a result of the Acquisition, each of the Defendants "controls or is controlled by, or is under common control with" the Finjan Signatories. Compl. ¶¶ 26, 49–50, 56–57. Any Affiliate who controls or is under "common control with" the Finjan Signatories is encompassed within the Agreement's definition of "Finjan;" following Intel's logic, "all patents owned or controlled" by Affiliates are included in the definition of "Finjan's Patents." *Id.* ¶¶ 29, 57. Intel also points to Finjan Holdings's description of the Acquisition as "'affiliates of Fortress Investment Group LLC (collectively "Fortress")' acquired Finjan Holdings." *Id.* ¶ 48 (quoting *id.* Ex. C at 5).

[28] Compl. Ex. A § 3.1(a); Compl. ¶¶ 58, 82–85, 95–102, 109.

On March 3, 2021, Defendants filed three motions to dismiss (the "Motions").[29] The Motions are fully briefed.[30] I heard argument on May 5 and *sua sponte* raised the issue of whether this Court has subject matter jurisdiction.[31] The parties submitted supplemental briefing regarding subject matter jurisdiction as of June 10.[32]

## II. ANALYSIS

"The Court of Chancery is proudly a court of limited jurisdiction."[33] "Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction."[34] The Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the jurisdictional issue *sua*

---

[29] D.I. 22 (VLSI's motion to dismiss); D.I. 23 (Fortress, Goldfish Holdings, and VLSI Holdings's motion to dismiss); D.I. 27 (Finjan, Finjan Holdings, and Finjan Software's motion to dismiss).

[30] D.I. 52; D.I. 62; D.I. 63; D.I. 67.

[31] D.I. 83 at 5, 53, 90 [hereinafter "Hr'g Tr"].

[32] D.I. 81; D.I. 85; D.I. 88.

[33] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019); *see also Pike Creek Recreational Servs., LLC v. New Castle Cty.*, 238 A.3d 208, 212 (Del. Super. 2020) ("Delaware proudly guards the historic and important distinction between legal and equitable jurisdiction." (quoting *Weston Invs., Inc. v. Domtar Indus., Inc.*, 2002 WL 31011141, at *1 (Del. Super. Sept. 4, 2002)) (internal quotation marks omitted)).

[34] *Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

*sponte*.[35] "The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[36] Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[37] Intel seeks to invoke this Court's limited jurisdiction through the second bucket, requesting equitable relief in the form of declaratory judgments and specific performance. Defendants contend that Intel has an adequate remedy at law.[38]

### A. This Court Does Not Have Subject Matter Jurisdiction Over Intel's License Defense.

Intel comes to this Court seeking a declaration absolving it of patent infringement liability *vis a vis* all the Defendants and all the patents they hold, buttressed by an order of specific performance. Intel's liability for infringing the

---

[35] *See*, *e.g.*, Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court *sua sponte*."), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013) (TABLE); *IBM Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991) ("[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties." (citations omitted)).

[36] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (identifying the three ways the "Court of Chancery can acquire subject matter jurisdiction").

[37] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5.

[38] D.I. 85 at 7.

11

Asserted Patents is or was pending before several other jurisdictions, in which Intel has an adequate remedy at law in the form of a license defense. There is no controversy over the rest of Defendants' patents.

### 1. Intel Has An Adequate Remedy At Law That Prevents This Court From Exercising Jurisdiction.

In Count II, Intel seeks a declaration that it has a license for the Asserted Patents; Count IV seeks specific performance of the Agreement's reciprocal covenant not to sue. These counts present the question of whether each Defendant is a Finjan Affiliate under the Agreement, such that all patents owned or controlled by Finjan and all entities under the Fortress umbrella are licensed to Intel under the Agreement. In essence, Intel seeks a single declaration and injunction that would stand in for a license defense in the many fora in which Intel has been sued.

Intel argues that it needs a declaration and injunction from this Court because it lacks an adequate remedy at law in the many Infringement Actions against it.[39] This Court does not "have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[40] "The question is whether the remedy available at law will afford the

---

[39] *Id.* at 9.

[40] 10 *Del. C.* § 342.

plaintiffs full, fair, and complete relief."[41]  "In deciding whether or not equitable

jurisdiction exists, the Court must look beyond the remedies nominally being sought,

and focus upon the allegations of the complaint in light of what the plaintiff really

seeks to gain by bringing his or her claim."[42]  "[W]hen there exists an adequate and

sufficient remedy at law, a claim cannot be converted to a cause in equity by the

mere invocation of a formulaic prayer for traditional equitable relief."[43]  In other

words, this Court must "take a practical view of the complaint" to determine what a

plaintiff really wants.[44]  From there, "[a] practical analysis of the adequacy of any

---

[41] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974)); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 2.03[b][2], at 2-33–34 (2021) [hereinafter Wolfe & Pittenger] ("As alluded to above, this is not to say that the mere existence of a potential remedy at law of any stripe will suffice to divest the Court of Chancery of subject matter jurisdiction.  To preclude the exercise of concurrent equitable jurisdiction, the alternative legal remedy at a minimum must be available to the plaintiff as a matter of right and must offer full, fair, and complete relief, as prompt, practical, and efficient to the ends of justice as the requested equitable remedy." (footnotes omitted) (compiling cases)); *see also El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995); *Theis v. Board of Educ.*, 2000 WL 341061, at *1 (Del. Ch. Mar. 17, 2000); *In re Wife, K.*, 297 A.2d 424, 425–26 (Del. Ch. 1972))).

[42] *Candlewood*, 859 A.2d at 997.

[43] Wolfe & Pittenger, § 2.03[a], at 2-3; *id.* ("In the more plain-spoken words of Chancellor Chandler, 'one cannot parade a duck around and call it a swan.'" (quoting *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at *2 (Del. Ch. Oct. 3, 2008))).

[44] *United BioSource LLC v. Bracket Hldg. Corp.*, 2017 WL 2256618, at *2 (Del. Ch. May 23, 2017) (quoting *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991)).

legal remedy, then, must be the point of departure for each matter which comes before this Court."[45]

In general, "the ability of a party to obtain the equivalent of injunctive relief by raising its contentions as a defense in an action at law[] constitutes an adequate remedy that precludes injunctive relief in equity."[46] Put differently, "[w]here there is a defense cognizable at law the possessor of it has an adequate remedy at law and equity will not enjoin his adversary from suing."[47] Where a party can seek an

---

[45] *Id.*

[46] *Takeda Pharms. U.S.A., Inc. v. Genentech, Inc.*, 2019 WL 1377221, at *5 (Del. Ch. Mar. 26, 2019) (quoting *Manor Healthcare Corp. v. Tolbert*, 1986 WL 5476, at *3 (Del. Ch. May 13, 1986)) (internal quotation marks omitted); *see also El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 1994 WL 248195, at *3 (Del. Ch. May 31, 1994), *aff'd*, 669 A.2d 36 (Del. 1995) ("It would only have to litigate its forum-based defense and, if successful, El Paso could measure its damages by the costs of litigation."); *Buczik v. Wonchoba*, 1993 WL 93444, at *2 (Del. Ch. Mar. 24, 1993) (ruling plaintiff "clearly has an adequate remedy at law because she may raise the release as an affirmative defense" in another action); *E.I. duPont de Nemours & Co. v. HEM Rsch., Inc.*, 1989 WL 122053, at *4 (Del. Ch. Oct. 13, 1989) (granting motion to dismiss equitable rescission claim because "plaintiff would have an adequate legal defense to an action by defendant under the instrument"); *Barsky v. Flaherty*, 1987 WL 33981, at *11 n.1 (Del. Ch. Dec. 30, 1987) ("Moreover, it appears that Barsky would be entitled to raise defensively (or by a motion to stay) in the Ohio action, the same contentions that he raises in support of his injunction motion in this action. Barsky therefore has an adequate remedy at law." (citing *Manor Healthcare*, 1986 WL 5476)).

[47] *Takeda*, 2019 WL 1377221, at *5 (quoting *Gray Co. v. Alemite Corp.*, 174 A. 136, 144 (Del. Ch. 1934)).

14

adequate legal remedy via a defense in a different forum, the Court of Chancery does not have subject matter jurisdiction to grant equitable relief.[48]

Here, Intel wants to escape the Infringement Actions without liability. To achieve this, it has nominally sought equitable relief in this Court in the form of declarations and specific performance. Intel has an adequate remedy at law in the form of a license defense in the Infringement Actions. This Court's decision in *Takeda Pharmaceuticals U.S.A., Inc. v. Genetech, Inc.* is analogous.[49] Like Intel, the plaintiff was an alleged infringer facing patent litigation in other fora.[50] The plaintiff argued it had a patent license defense to the infringement claims based on the definition of patents in an agreement to which it—but not the patentholder—was a party.[51] The alleged infringer filed a complaint against the licensor in the Court of Chancery "seek[ing] a declaratory judgment that [the alleged infringer] has a license

---

[48] *El Paso*, 669 A.2 at 40 (affirming a Chancery plaintiff could raise its defense in a first-filed Texas action and therefore had an adequate remedy at law); *Buczik*, 1993 WL 93444, at *1–2 (holding the court did not have subject matter jurisdiction to grant specific performance enforcing a release where the plaintiff had "an adequate remedy at law because she may raise the release as an affirmative defense"); *see also Manor Healthcare*, 1986 WL 5476, at *3 ("In this case the grounds urged by Manor in support of its claim for injunctive relief in this Court could be asserted defensively by Manor in the Oklahoma action, either as an affirmative defense or in a motion to dismiss that action. In other factual settings, this Court has found that the ability of a party to obtain the equivalent of injunctive relief by raising its contentions as a defense in an action at law, constitutes an adequate remedy that precludes injunctive relief in equity." (collecting cases)).

[49] 2019 WL 1377221.

[50] *Id.* at *3.

[51] *Id.* at *1, *3.

15

and an anti-suit injunction against the [patentholder] and anyone acting in active concert or participation with it."[52] This Court held it did not have subject matter jurisdiction to grant the equitable relief the plaintiff sought because it had an adequate remedy at law in the form of its patent license defense.[53] The Court's "conclusion depend[ed] on Takeda's ability to assert a license defense in" the infringement action.[54]

Intel argues *Takeda* is inapplicable because in that case, unlike this one, the patentholder was not a party to the Chancery action and thus could not be bound by this Court's ruling.[55] In Intel's view, the patentholder's absence from the Chancery action meant the infringement action offered Takeda a superior legal remedy. Here, because all the Defendants are joined in the Chancery action, Intel asserts that "only injunctive relief in this Court would bind all parties and address all issues."[56]

But the Federal Circuit has found that a first-filed infringement action can, and should, resolve the scope of a license granted by a licensor that is not a party to the infringement dispute. *Futurewei Technologies, Inc. (Futurewei I) v. Acacia*

---

[52] *Id.* at *1.

[53] *Id.* at *5–7.

[54] *Id.* at *7.

[55] D.I. 81 at 16 ("Takeda and its subsidiaries then filed suit against Roche's subsidiary in [the Court of] Chancery—without joining Roche.").

[56] *Id.* at 17.

16

*Research Corp.* addressed a patent infringement defendant's attempt to assert a license defense in a second-filed action.[57] Huawei had been sued for patent infringement in the Eastern District of Texas, and responded by suing the patentholder, as well as the parties to a license to which Huawei asserted it was a third party beneficiary, in a California District Court, seeking declaratory judgments for noninfringement and patent invalidity.[58] The California court dismissed Huawei's claims.[59] On appeal, the Federal Circuit affirmed that Huawei should assert its license defense as a third party beneficiary in the first-filed Texas infringement action.[60] "Separating the third-party-beneficiary issue [from the non-infringement and invalidity issues in the Texas case] cannot serve the objective of efficiency."[61] Under this authority, Intel can and should pursue its license defense in the Infringement Actions, even though not all Defendants are parties to those actions.

---

[57] 2012 WL 12905300 (C.D. Cal. Oct. 22, 2012).

[58] *Id.* at *1.

[59] *Id.* at *7.

[60] *Futurewei Techs., Inc. (Futurewei II) v. Acacia Rsch. Corp.*, 737 F.3d 704, 707–08 (Fed. Cir. 2013); *id.* at 709 ("[T]here is no doubt that Huawei can argue for that status in the Texas case. And there is likewise no doubt that keeping the issue in the Texas case will serve key objectives in the first-to-file rule, including the minimization or avoidance of 'duplication of effort, waste of judicial resources, and risk of inconsistent rulings that would accompany parallel litigation.'" (citations omitted)).

[61] *Id.* at 709.

17

Intel also contends the number of Infringement Actions makes its license defenses inadequate. Intel argues it "will continue to be subjected to the burden of litigating multiple infringement actions" and the risk of inconsistent judgements.[62] Intel suggests the time and expense spent litigating in several fora constitutes irreparable harm.[63] But the adequacy of a legal remedy is not destroyed because of "the mere existence of a convenient or preferable equitable remedy."[64] "[E]quity will not interfere where the object is to obtain a consolidation of actions, or to save the expense of separate actions.'"[65] And even if this Court had jurisdiction, Intel would still face the risk of inconsistent analyses or outcomes, at least between this Court and the Delaware Action in which Intel is asserting a license defense.[66]

Along these same lines, Intel asserts that a successful license defense in a United States District Court action might not serve to collaterally estop a judgment

[62] D.I. 81 at 13.

[63] *Id.* at 14.

[64] *N. Am. Philips Corp. v. Aetna Cas. & Sur. Co.*, 1988 WL 60376, at *3 (Del. Ch. June 9, 1988) (citing *Chateau Apartments Co. v. City of Wilm.*, 391 A.2d 205 (Del. Supr. 1978); and then citing *Dieman v. Sussex Cty.,* (Del. Ch. Aug. 25, 1982)).

[65] *N. Am. Philips Corp.*, 1988 WL 60376, at *3 (quoting *Murphy v. City of Wilm.,* 6 Houst. 108, 139 (Del. Ct. E. and A. 1880)); *Takeda*, 2019 WL 1377221, at ("[T]he Court's subject matter jurisdiction does not depend on convenience.").

[66] *See Takeda*, 2019 WL 1377221, at *7 ("I decline to decide these issues: I lack jurisdiction to do so, and addressing those issues in tandem with the German court may risk inconsistent analyses or outcomes."). Intel has also not addressed how a sweeping declaration in its favor would be consistent with the verdict against it in *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-00057-ADA (W.D. Tex.).

in a Chinese court, particularly in the absence of an injunction.[67]  But Intel has not

demonstrated that it has no adequate means of presenting its license defense, on a

standalone basis or as buttressed by a federal judgment, to the Chinese courts.[68]

If Intel had come to this Court two years ago, on the heels of the Infringement

Actions, the adequacy of its legal remedies and the boundary of this Court's subject

matter jurisdiction would have been clear.  Now, Intel suggests its remedy at law is

not "presently available" because it is too late for Intel to assert a license defense, or

take discovery in support of that defense, in many of the Infringement Actions.[69]

Some of the cases have proceeded to a verdict; in others, the courts have not ruled

on Intel's motions to amend its answers to include its license defense.[70]

The fact that Intel has not yet availed itself of a remedy at law in every

Infringement Action does not render that remedy inadequate for purposes of

invoking this Court's subject matter jurisdiction.  As the maxim goes, "Equity aids

---

[67] D.I. 81 at 16.

[68] *Takeda*, 2019 WL 1377221, at *6 (finding Takeda did not offer evidence that the German court could not effectively resolve the disputes before it and therefore, Takeda had an adequate legal remedy in the German infringement proceedings).

[69] D.I. 81 at 12–13, 15–16; *see also id.* at 15 ("[T]he Shanghai court has evidenced a reluctance to adjudicate Intel's license defense as it did not review the issue during trial.") (citing *id.* Ex. A ¶¶ 2–3).

[70] *Id.* at 12–13.

the vigilant, not those who slumber on their rights."[71]  Equity's reluctance to aid the slumbering classically manifests in denying an equitable claim based on laches.  But I believe equity will also refuse to aid one who slumbered on its legal rights by expanding its jealously guarded subject matter jurisdiction to compensate for that failure.[72]  By the time Intel filed its January 2021 Complaint, it had enjoyed an available legal remedy in the form of license defenses in the Infringement Actions for several months, since the July 2020 Acquisition.[73]  Intel's choice not to promptly pursue those defenses in every Infringement Action does not change or blur the boundary of this Court's equitable jurisdiction.[74]

---

[71] 2 *Pomeroy's Equity Jurisprudence* § 418 (5th ed. 1941) (explaining that the maxim "equity aids the vigilant, not those who slumber on their rights"—the equitable basis for the doctrine of laches—"may properly be regarded as a special form of the yet more general principle, He who seeks equity must do equity").

[72]

[73] Intel asserted its license defense in a letter to Defendants dated August 17, 2020, after each of the Infringement Actions had been initiated.  *See* Compl. Ex. E.  Intel raised a license defense in both of the China Actions and sought to raise a license defense in one of the Texas Actions before filing the January 11, 2021 Complaint.  D.I. 81 at 4, 6.  For reasons that are unclear, Intel did not raise its license defense in other actions until after filing its Complaint here. *See id.* at 4 (describing how Intel did not raise a license defense in two of the three Texas Actions until after Intel filed the Complaint in the Court of Chancery); *id.* at 5 (describing how Intel did not raise a license defense in the Delaware Action until after Intel filed the Complaint in the Court of Chancery); *id.* at 6 (stating Intel did not raise a license defense in the California Action).

[74] *Cf. Buczik*, 1993 WL 93444, at *2 (finding plaintiff's fear that "raising the release as an affirmative defense in the Superior Court action would not be an adequate remedy because the jury . . . might disregard the merits of the release" meritless); *Maplewood Indus., Inc. v. Dep't of Nat. Res. & Env't Control*, 1989 WL 155944, at *4 (Del. Ch. Dec. 7, 1989) (finding plaintiff had an adequate remedy at law via a damages action, notwithstanding

Finally, Intel suggests that it lacks an adequate remedy outside of the Court of Chancery because of the Agreement's forum selection clause. Section 11.4 provides "[a]ll disputes and litigation regarding this Agreement and matters connected with its performance shall be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware . . . or the United States District Court for the State of Delaware."[75]  Intel is the defendant in a patent infringement suit before the United States District Court for the State of Delaware.[76]  Intel may present its license defense in that existing forum and comply with the Agreement's forum selection clause.[77]

---

defendant's possible sovereign immunity defense to plaintiff's action, should plaintiff chose to move forward); *id.* ("Without deciding an issue which is not before me, moreover, it appears that an action at law is available to the plaintiffs if they are correct with respect to their constitutional claims.").

[75] Compl. Ex. A § 11.4; Compl. ¶ 37; D.I 81 at 9–10.

[76] *See VLSI Tech. LLC v. Intel Corp.*, No. 1:18-CV-00966-CFC (D. Del.).

[77] Alternatively, it appears Intel may present its license defense in the first-filed forum, the California Action.  In *Futurewei I*, Huawei claimed it had to assert its rights under a license in the agreement's selected forum.  2012 WL 12905300, at *4–7.  The Federal Circuit held it could and should assert those rights in the first-filed infringement action in a different forum.  *Futurewei II*, 737 F.3d at 708 ("Here, Huawei has said that its status as a third-party beneficiary can matter for two purposes: to invoke the license agreement's section 2.1 to protect it against the allegations it is infringing the five patents; and to invoke the agreement's section 9.1, regarding forum selection.  Those provisions of the license agreement are already at issue in the first-filed Texas action, or readily could be."); *id.* at 710 ("It makes no sense for this count to be adjudicated as a stand-alone claim in California while the relevant, substantive claims to which it directly relates are being litigated in Texas."); *see Comcast Corp. v. Rovi Corp.*, 2016 WL 4991625, at *3 (S.D.N.Y. Sept. 16, 2016) ("Litigants who believe that a forum selection clause governs an action brought in an alternative forum should first seek to resolve the venue issue in the first-filed forum, absent exceptional circumstances."); *see also Zix Corp. v. Echoworx Corp.*, 2016 WL 7042221, at *2–3 (E.D. Tex. June 9, 2016) (discussing the "continuum" of

21

For the foregoing reasons, it appears that the relief Intel seeks here is duplicative of an adequate remedy at law, and so this Court lacks subject matter jurisdiction.[78] Counts II and IV are dismissed without prejudice.[79]

### 2. Plaintiff's Breach Of Contract Claim Cannot Be Resolved Without Resolving Plaintiff's Claims Seeking Equitable Relief.

Building on its theory that the Agreement granted Intel a license to VLSI's Asserted Patents, Intel contends Fortress and VLSI breached their obligations under the Agreement by

> (i) refusing to follow the Dispute Resolution Process outlined in the [Agreement]; (ii) denying that Intel is licensed under all Asserted Patents, (iii) denying that Intel is released from all liability under them, and (iv) continuing to litigate (or causing a related entity to continue to litigate) the various patent infringement actions, currently ongoing across the U.S. and abroad, relating to the Asserted Patents against Intel.[80]

---

considerations for choosing a forum for license defenses, balancing the license agreement's contracted forum with the infringement plaintiff's first-filed forum). *But see Gen. Protecht Gp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355 (Fed. Cir. 2011) (granting a preliminary injunction to enforce the parties' forum selection clause over the first-filed rule).

[78] *See El Paso*, 669 A.2 at 40 (citing *Gray*, 174 A. at 144).

[79] *See Takeda*, 2019 WL 1377221, at *7 & n.73 (granting dismissal without prejudice for lack of subject matter jurisdiction and collecting cases).

[80] Compl. ¶ 114.

Intel also argues Finjan breached its obligations by failing to cause its Affiliates, *e.g.* VLSI, to comply with the Agreement's license, release, and covenant not to sue.[81] Intel contends the breaches have caused it to "expend[] time and resources simultaneously defending itself against alleged infringement of the Asserted Patents, while seeking to vindicate its right to be free from such patent infringement actions under the [Agreement]."[82]

To successfully plead a breach of contract claim, a plaintiff must demonstrate: (1) the existence of the contract; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff.[83] While the parties do not dispute the existence of the Agreement, they do dispute which parties are bound by the Agreement and the duties owed.

Intel's breach claims present issues within the scope of Intel's license defenses, namely (i) the definition of Affiliates, (ii) whether Fortress and VLSI are bound by the Agreement, and (iii) whether Finjan's Patents encompass the Asserted Patents. I would need to resolve these issues in order to determine whether Finjan,

---

[81] *Id.* ¶ 113 (asserting Finjan breached the Agreement by: "(i) failing to cause its Affiliates to comply with the [Agreement], as required by § 8.3, including by failing to secure Intel's license to the Asserted Patents and release from all liability under them, and (ii) failing to ensure that Affiliates comply with the [Agreement]'s covenant not to sue.").

[82] *Id.* ¶ 115.

[83] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).

Fortress, or VLSI have breached the Agreement. But, for the reasons I have explained, these issues are properly decided in the first-filed Infringement Actions.[84]

Courts have "inherent power . . . to exercise [their] discretion to control the disposition of actions on [their] docket[s] in order to promote economies of time and effort for the court, litigants, and counsel."[85] Count III will be stayed until one of the Infringement Actions determines whether Fortress and VLSI are bound by the Agreement and whether VLSI's patents are licensed to Intel under the Agreement. I ask the parties to keep this Court informed of any material developments. If Intel chooses to ask one of the Courts presiding over an Infringement Action to hear not only its license defense, but also its breach claims building on that Court's interpretation of the Agreement, I ask Intel to inform this Court of that election.

### B. Plaintiff Failed To Plead Fortress And VLSI Tortiously Interfered With The Agreement.

In the alternative to claiming Fortress and VLSI breached the Agreement, Intel also claims Fortress and VLSI "have intentionally caused Finjan to breach the [Agreement] by not allowing Finjan to secure Defendants' compliance with the

---

[84] *See Futurewei II*, 737 F.3d at 709 ("The interest in the just and effective disposition of disputes likewise does not warrant an exception to the first-to-file rule. The Texas court can decide the issues presented by count 11, if necessary, including the relationship between the no-third-party-beneficiary rights provision of the license agreement and either (a) the enforcement-protection provision or (b) the [California] forum-selection provision").

[85] *Joseph v. Shell Oil Co.*, 498 A.2d 1117, 1123 (Del. Ch. 1985) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)).

license and release provisions in the [Agreement]."[86]  Like Intel's breach claims, its tortious interference claims require Intel's license defense to be adjudicated first. But unlike Intel's breach claims, they fail to pass muster under Court of Chancery Rule 12(b)(6).  They are therefore dismissed.

The elements of tortious interference with a contract are: (1) a contract, (2) about which defendant knew, (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.[87]  Intel pleads "[o]n information and belief," Fortress directed VLSI to not dismiss the Infringement Actions knowing that this would cause Finjan to breach the Agreement.[88]  Intel also alleges "[o]n information and belief, VLSI knew that by intentionally failing to dismiss the [Infringement Actions], it would cause Finjan to breach the terms of the [Agreement]."[89]  Intel argues Fortress and VLSI "were not justified in their conduct because, just like they enjoyed the benefits of the Acquisition, they assumed Finjan's liabilities by virtue of the same Acquisition."[90]

Intel's theory of liability depends on VLSI owing Intel a license.  If VLSI does

---

[86] Compl. ¶ 126 (citing *id.* Ex. A §§ Preamble, 3.1, 5.1); Hr'g Tr. 75.

[87] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks omitted).

[88] Compl. ¶¶ 127–28.

[89] *Id.* ¶¶ 129.

[90] *Id.* ¶¶ 92, 130.

not owe Intel a license, Finjan did not breach the Agreement. In order for VLSI to owe Intel a license, it must be an Affiliate under the Agreement, contractually bound to give a license to Intel. If VLSI is an Affiliate, so is Fortress. As a matter of logic, Intel's claim against VLSI requires binding VLSI, and therefore Fortress, in contract. As a matter of law, those contractually bound entities may not be liable for tortious interference.[91] Intel's contractual theory of liability, which must hold true for Finjan to have committed a predicate breach, precludes a tortious interference claim against VLSI and Fortress.

And even if VLSI and Fortress could be liable in tort, Intel has failed to state a claim for tortious interference. As explained by cases Intel engaged with in briefing, nonsignatory parent and affiliate companies can tortiously interfere with their subsidiaries' contracts only as filtered through a "limited affiliate privilege."[92]

---

[91] *Kuroda v. SPJS Hldgs., LLC*, 971 A.2d 872, 884 (Del. Ch. 2009) ("It is well settled that a party to a contract cannot be held liable for [both] breaching the contract and for tortiously interfering with that contract.").

[92] *Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053, at *26–28 (Del. Ch. Oct. 7, 2019); *id.* at *27 ("As with a corporate parent and its subsidiary, or wholly owned affiliates with a common parent, a general partner and its controllers 'share the commonality of economic interests which underlay the creation of an interference privilege.'" (quoting *Shearin v. E.F. Hutton Gp.*, 652 A.2d 578, 590 n.14 (Del. Ch. 1994))); *Shearin*, 652 A.2d at 590 n.14 (holding that for purposes of assessing justification, "the relationship among wholly owned affiliates with a common parent is no different . . . than that between a parent and a subsidiary"); *see also NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at *26 (Del. Ch. Nov. 17, 2014) ("Delaware law rejects the theory that 'a parent and its wholly owned subsidiaries constitute a single economic unit' such that 'a parent cannot be liable for interfering with the performance of a wholly owned

26

"When the defendant that a plaintiff has sued for tortious interference controls an entity that was a party to the contract, the weighing of factors becomes more complex because of the need to balance the important policies served by a claim for tortious interference with contract against the similarly important policies served by the corporate form."[93] The limited affiliate privilege protects a parent or other affiliated entity that "pursues lawful action in the good faith pursuit of the subsidiary's profit making activities" and "recognizes that the close economic relationship of related entities requires enhanced latitude in defining what improper interactions would be."[94] "In the parent-subsidiary context, the test for holding a parent corporation liable for tortious interference ha[s] to be high or every-day consultation or direction between parent corporations and subsidiaries about contractual implementation would lead parents to be always brought into breach of contract cases."[95]

To sufficiently plead that a corporate parent or affiliate acted without justification when interfering with a subsidiary's contract, the burden is on the

subsidiary.'" (quoting *Shearin*, 652 A.2d at 590)); *id.* at *26 ("In other words, 'a parent corporation can be held liable for tortiously interfering with its subsidiaries' contracts when a plaintiff proves that the parent was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises.'" (quoting *Allied Cap. Corp. v. GC–Sun Hldgs., L.P.*, 910 A.2d 1020, 1039 (Del. Ch. 2006))).

[93] *Bandera*, 2019 WL 4927053, at *26.

[94] *Id.* (internal quotation and alteration omitted) (quoting *Shearin*, 652 A.2d at 590).

[95] *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *10 (Del. Ch. Dec. 28, 2018) (internal quotation marks omitted) (quoting *Allied Cap.*, 910 A.2d at 1039).

plaintiff to "plead and prove that the privilege among affiliates to discuss and recommend action is not applicable or, stated affirmatively, to allege facts that would make the 'interference' improper": the plaintiff must allege facts that support a reasonable inference that the "interfering party was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises."[96] "Such a showing would, for example, be satisfied by allegations that the interference was motivated by some malicious or other bad faith purpose."[97]

---

[96] *Shearin*, 652 A.2d at 590–91 (internal quotation marks omitted); *accord NAMA Hldgs,* 2014 WL 6436647, at *30 (noting a parent's intent for the subsidiary to breach the contract "will not support imposing liability for tortious interference if the breach is consistent with the good faith pursuit of the subsidiary's legitimate profit-making activities, such as through an efficient breach of contract"); *Bandera*, 2019 WL 4927053, at *27 (determining a "complaint must allege the facts that support a reasonable inference that the [affiliated entity's] interference was 'motivated by some malicious or other bad faith purpose' rather than 'to achieve permissible financial goals.'" (quoting *Shearin*, 652 A.2d at 591)); *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *8 (Del. Super. Jan. 13, 2021) (explaining the complaint must "allege facts showing [the affiliate]'s interference was unjustified—a meddling motivated not by legitimate economic goals, but with bad faith to injure the [contractual counterparty]" (internal quotation marks and alterations omitted)).

    Fortress sought dismissal on the grounds that Intel did not plead a lack of justification. D.I. 24 at 17. Specifically, Fortress contended Intel failed to allege that "any unpled intentional act was solely motivated by an intent to interfere." *Id.* (citing *WaveDivision Hldgs, LLC v. Highland Cap. Mgmt., LP*, 49 A.3d 1168, 1174 (Del. 2012)). *WaveDivision* explains that in considering the actor's predominant motive as one of many factors underlying a determination of lack of justification, the actor's motive will only support a finding of improper interference "[o]nly if the defendant's sole motive was to interfere with the contract." 49 A.3d at 1174. As Fortress recognized in its reply brief, its argument is even stronger through the lens of *Shearin*. D.I. 63 at 20.

[97] *Shearin*, 652 A.2d at 591; *see also, e.g.*, *Himawan*, 2018 WL 6822708, at *10–11 (rejecting as conclusory an allegation that pled the defendant "did not pursue the profit-seeking objectives of [subsidiary], but instead acted in bad faith to injure Plaintiffs," where

Assuming an underlying breach, Intel has not pled any facts to support a reasonable inference that VLSI or Fortress's alleged interference with the Agreement was motivated by a malicious or bad faith purpose, instead of financial reasons shared with Finjan. In fact, Intel's sole sentence about their justification does not mention malice or bad faith: it appears to plead they acted out of privileged economic alignment with Finjan affiliates, alleging they were not justified because they "assumed Finjan's liabilities by virtue of the same Acquisition."[98]

Intel has failed to plead that Fortress or VLSI tortiously interfered with the Agreement. Count V is dismissed.

### C. There Is Not An Actual Controversy As To All Patents.

Intel also asks this Court for relief beyond the Asserted Patents, which cannot be remedied in the Infringement Actions. Count I seeks a declaratory judgment that the Agreement "Encompasses All Patents Owned or Controlled by Defendants."[99]

---

the inference of bad faith was not supported); *NAMA Hldgs*, 2014 WL 6436647, at \*30–31 (finding the parent interfered in bad faith by pursuing its own interest that the subsidiary did not share).

[98] Compl. ¶¶ 92, 130. In briefing, Intel asserts Fortress induced Finjan's breach to benefit VLSI, a separate affiliate, and so is not shielded by the limited affiliate privilege. D.I. 52 at 54. Intel argues it has pled that Fortress "acted maliciously and in bad faith by acquiring the Finjan Defendants, accepting the benefits of the Patent Licenses, and proceeding to cause the Finjan Defendants to breach their contractual obligations to Intel Corporation for reasons unrelated to efficient management of the Finjan Defendants." *Id.* at 55. Intel did not plead this motive, and Fortress's pursuit of enterprise profit does not constitute malice or bad faith toward Intel, as required under the limited affiliate privilege.

[99] Compl. ¶¶ 95–102; D.I. 81 at 10–11.

29

The parties dispute whether there is an actual controversy as to Count I beyond the Asserted Patents.[100]

"Delaware courts are statutorily authorized to entertain an action for a declaratory judgment, provided that an 'actual controversy' exists between the parties."[101] To show an "actual controversy," a party must show four factors:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[102]

Here, the sticking point is whether the issue is ripe for judicial determination.[103] "Generally, a dispute will be deemed ripe if 'litigation sooner or later appears to be unavoidable and where the material facts are static.'"[104] Intel does not identify any litigation other than the Infringement Actions, or any other patents other than the Asserted Patents that are in dispute. Therefore, the scope of the Agreement beyond the Asserted Patents is not "ripe for judicial determination;" in the absence of

---

[100] *Compare* D.I. 81 at 10–11, *with* D.I. 85 at 10; *see* Compl. ¶¶ 95–102.

[101] *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216–17 (Del. 2014) (citing *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989)).

[102] *Id.* at 1217 (quoting *Stroud*, 552 A.2d at 479–80).

[103] D.I. 85 at 10 ("Intel's attempt to invoke a hypothetical, unpled dispute with respect to an untold number of alleged Fortress-owned entities or 'Fortress-controlled' patents cannot be the basis for subject matter jurisdiction in this Court." (footnotes omitted)).

[104] *XI Specialty Ins.*, 93 A.3d at 1217 (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

ripeness, there is not an actual controversy on which the Court can grant declaratory judgment. Count I is dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motions are **GRANTED** as to Counts I, II, IV, and V. Defendants' Motions as to Count III are **DENIED**. Count III is **STAYED**; the parties shall update the Court with any material developments.